Filed 8/21/20  P. v. Alvarado CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN ALVARADO,<br><br>    Defendant and Appellant. | B299695<br><br>(Los Angeles County<br>Super. Ct. No. BA430049) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Affirmed.

Myra Sun, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Kevin Alvarado pled no contest to second degree murder in 2019.  The trial court sentenced him to a term of 15 years to life in prison, and, over his objection, imposed various fines and fees.  Alvarado contends that under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court's inquiry into his ability to pay did not satisfy the requirements of due process; its denial of his request to stay the fees and fines was an abuse of discretion; and the matter must be remanded for an adequate ability-to-pay hearing.  We disagree, and affirm the judgment.

PROCEDURAL BACKGROUND[1]

In September 2014, 17-year-old Alvarado shot and killed Bryan Rubio.  While in custody between 2017 and 2019, Alvarado was charged with four unrelated counts of custodial possession of a weapon (Pen. Code, § 4502, subd. (a))[2] and one count of making criminal threats (§ 422).[3]  He also was found in possession of "pruno," a prisoner-made alcoholic beverage.

On April 4, 2019, Alvarado pled no contest to second degree murder.  (§ 187, subd. (a).)  The court advised that it was required to impose a restitution fine, a suspended parole revocation restitution fine, a court security fee, and a conviction fine.  Alvarado stated that he understood.  Defense counsel stated

---

[1]     Because the evidence underlying Alvarado's crime is not relevant to the issue presented on appeal, we do not discuss it here.

[2]     All further undesignated statutory references are to the Penal Code.

[3]     In 2017, Alvarado was convicted by a jury of one of the weapons possession charges, and sentenced to two years in jail.

2

Alvarado lacked the ability to pay, and he would address the issue at sentencing. The court responded, "I'm sure what he receives in state prison will in part satisfy this."

Sentencing transpired on May 16, 2019. In accordance with the negotiated plea, the court sentenced Alvarado to 15 years to life on the murder charge.[4] Regarding the *Dueñas* issue, defense counsel argued that the fines and fees should be stayed because Alvarado did not have the ability to pay, given that he had been in custody for five years. The trial court responded: "The court is mindful that during his term in state prison, he will be paid a de minimis amount, but nonetheless, something for his labor. I am disinclined to waive." Accordingly, the court imposed a restitution fine of $300 (§ 1202.4); a suspended parole revocation restitution fine in the same amount (§ 1202.45); a $40 court operations assessment (§ 1465.8, subd. (a)(1)); and a $30 criminal conviction assessment (Gov. Code, § 70373). It did not order direct victim restitution. At Alvarado's request, it issued a certificate of probable cause on the question of imposition of the fines and fees.

Alvarado timely filed a notice of appeal.

---

[4] At the sentencing hearing, the custodial weapon possession charge in case number BA465948 was amended to allege possession of a dirk or dagger in violation of section 21310, and Alvarado pled guilty to that offense. The court ordered sentence on that offense to run concurrently with the sentence on the murder charge. In case no. BA465948, it imposed a $300 restitution fine, a suspended parole revocation restitution fine in the same amount, a $40 court security fee, and a $30 felony conviction assessment. The other custodial charges were dismissed either prior to or at the sentencing hearing.

3

## DISCUSSION

*Alvarado is not entitled to a further hearing on his ability to pay fines and assessments*

*Dueñas* held due process requires that a trial court conduct an ability-to-pay hearing and ascertain a defendant's ability to pay before imposing assessments under section 1465.8 and Government Code section 70373, and before executing a restitution fine under section 1202.4. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) Relying on *Dueñas*, Alvarado contends that the court here did not conduct a constitutionally adequate hearing into his ability to pay. Therefore, he avers, the court abused its discretion by failing to stay imposition of the fees and fines, and the matter must be remanded for a further ability-to-pay hearing. We reject his claim for several reasons.

First, we agree with other courts that have concluded *Dueñas* was wrongly decided. (See *People v. Hicks* (2019) 40 Cal.App.5th 320, 327–329, review granted Nov. 26, 2019, S258946; *People v. Cota* (2020) 45 Cal.App.5th 786, 794–795; *People v. Petri* (2020) 45 Cal.App.5th 82, 90–92; *People v. Adams* (2020) 44 Cal.App.5th 828, 831; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279–280; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060, 1067–1069.) Our Supreme Court is currently reviewing whether a trial court must consider a defendant's ability to pay before imposing or executing fines, fees, or assessments, and, if so, which party bears the burden of proof on the question. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) Pending further guidance from our Supreme Court on the issue, we agree with the courts that have rejected *Dueñas*.

4

Second, *Dueñas* is distinguishable from the instant matter. Dueñas was the disabled, unemployed, often homeless mother of two young children, who subsisted on public aid. When she was a teenager, her driver's license was suspended because she was unable to pay juvenile citations. She was then convicted of a series of misdemeanor offenses for driving with a suspended license, and was given the choice of paying fees and fines or going to jail. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160–1161.) Dueñas's case thus stemmed from "a series of criminal proceedings driven by, and contributing to," her poverty. (*Id.* at p. 1164.) The situation in which Alvarado has put himself does not implicate the same due process concerns at issue in the factually unique *Dueñas* case. Alvarado, unlike Dueñas, does not face incarceration because of an inability to pay assessments and fines. He is in prison because he committed murder. Even if he does not pay the assessments and fines, there is no indication he will suffer the cascading and potentially devastating consequences Dueñas faced. (See *People v. Caceres* (2019) 39 Cal.App.5th 917, 926–927 [concluding that "the due process analysis in *Dueñas* does not justify extending its holding beyond" the "extreme facts" presented therein]; *People v. Adams*, *supra*, 44 Cal.App.5th at p. 832; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054–1055; *People v. Johnson* (2019) 35 Cal.App.5th 134, 138–139.)

Third, even if we were to conclude that an ability-to-pay hearing was required, there was no due process violation or abuse of discretion here. A trial court abuses its discretion only if its decision is arbitrary, whimsical, or capricious, such that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377; *People v. Williams* (2018) 19

Cal.App.5th 1057, 1062; *People v. Downey* (2000) 82 Cal.App.4th 899, 909–910.)  Here, the trial court *did* consider Alvarado's ability to pay.  It considered and rejected Alvarado's conclusory assertion that he lacked the ability to pay, reasoning that he would  earn a "de minimis amount" for his labor in prison.  This finding was not arbitrary, capricious, or unreasonable.  Courts have repeatedly held that, when determining ability to pay, a defendant's potential prison wages may be taken into account. (See *People v. Aviles*, *supra*, 39 Cal.App.5th at p. 1076; *People v. Johnson*, *supra*, 35 Cal.App.5th at pp. 139–140; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035; *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229; *People v. Lowery*, *supra*, 43 Cal.App.5th at pp. 1060–1061; see *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to obtain prison wages is properly considered in an ability-to-pay calculus].)  Alvarado has been sentenced to a lengthy term.  In this case, the court imposed a total of $370 in fines and fees, and the same amount in the unrelated dirk or dagger case, No. BA465948.  Nothing in the record indicates he is unable to work, or would be unable to pay these fines and fees during the duration of his prison term.  It was therefore reasonable for the court to conclude Alvarado would likely be able to make payments during his incarceration.

Alvarado argues that he is unlikely to be able to obtain paid employment in the prison system.  He points out that paid prison work is a privilege, and is assigned based on, among other things, an inmate's education and skill level, abilities, dependability, behavior, and relationships with staff and other inmates.  (See Cal. Code Regs., tit. 15, §§ 3040, subd. (k), 3041.1, 8004.1)  He is a "regrettably poor candidate for paid employment" in the prison, he insists, because of his youth, his lack of work

6

experience, and the absence of any showing he completed high school. If he is deemed to need further education, his educational activities will be unpaid and will precede paid employment. Moreover, his possession of weapons and "pruno," and his "rocky" relationships with other inmates, decreases the likelihood he will succeed in obtaining a prison job. And, the fact the number of inmates vying for positions outstrips the number of available jobs further decreases his chances.

But even assuming the accuracy of the assertion that he may not immediately become employed in prison, none of this information was presented to the trial court, which cannot be faulted for failing to consider information and arguments not presented to it. Alvarado did not offer, or attempt to offer, evidence that he has sought, but was unable to obtain, prison employment, or that he would be forever precluded from a paid assignment. Nor did he present any other information bearing on his ability to pay, except his counsel's conclusory assertion that he could not do so because he had been in custody for five years. Under these circumstances, the trial court did not abuse its discretion and Alvarado's due process rights were not violated.[5]

---

[5] In light of our conclusions, we do not address the parties' arguments regarding the excessive fines clause.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

DHANIDINA, J.